UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>EDGAR DIAZ, RICKEY ROLLINS, DON JOHNSON, ROBERT CALLOWAY, DORNELL ELLIS, EMILE FORT, CHRISTOPHER BYES, PARIS RAGLAND, RONNIE CALLOWAY, ALLEN CALLOWAY, and REDACTED DEFENDANTS NOS. ONE & TWO,<br><br>    Defendants.<br>                                                             / | No. CR 05-0167 WHA<br><br>**ORDER DENYING DEFENDANT RAGLAND'S MOTION TO SUPPRESS EVIDENCE (Doc. No. 611)** |

## INTRODUCTION

In this RICO gang prosecution, defendant Paris Ragland moves to suppress evidence obtained during a traffic stop and subsequent arrest on November 17, 2003. An evidentiary hearing was held on October 16, 2006, during which one of the arresting officers, Officer Maris Goldborough, testified. For the reasons below, defendant Ragland's motion is **DENIED**.

## STATEMENT

In the early morning on November 17, 2003, two different parties called 911 to report hearing a series of shots fired rapidly, both calls coming from the same neighborhood. One was from Phil Lynch, a private security guard assigned to the Sunnydale housing project. He called at 6:05 a.m. Another unidentified caller in the same neighborhood called at 6:20 a.m.

1    She reported five shots fired and indicated that she saw a white vehicle up the hill, where the
2    buses turn around. She said the white vehicle was just sitting there. She had waited to call
3    because she had been afraid to do so earlier. Through a radio report made by dispatch, the
4    officers were told there was "a white Chevrolet Caprice with a California license plate similar
5    to 5CTZ591 in the area of the shots and possibly related to the call." Officers Maris
6    Goldborough and Yvette Poindexter responded to the dispatch (Exh. A at p. 6; Exh. E;
7    Opp. Exh. D).

8    While responding to the report of shots fired around 1800 Sunnydale Avenue,
9    Officers Goldborough and Poindexter encountered two fellow officers, Eric O'Neal and
10   Luis Tillan, at the intersection of Sunnydale Avenue and Santos Street. They were already
11   speaking with the security guard. Mr. Lynch was recounting an episode from earlier that
12   morning: A white Chevrolet Caprice with four African-American males had been shadowing his
13   security vehicle (that Lynch was riding in with three fellow security guards), between two and
14   three in the morning. One of the occupants in the white Caprice had pointed his hand at the
15   guards in a gun-shaped position. As Lynch was telling the officers about this incident, a white
16   Caprice drove by. Lynch told the officers "that's the car," in reference to what he believed was
17   the same white Caprice. At that point, the officers pulled the vehicle over. The license plate of
18   the white Caprice was 5CTZ571, one digit off from the license plate number dispatch had
19   reported as a "similar" plate number. The officers called in the license plate and discovered that
20   the vehicle had recently been purchased by defendant Ragland. Defendant Ragland was driving
21   the car that morning. The officers made the occupants get out of the vehicle. They performed a
22   pat search of the occupants. It yielded nothing. The officers then searched the vehicle.
23   They found a .22 caliber pistol beneath the back seat behind the driver's seat. The officers then
24   arrested defendant Ragland and one of his fellow passengers, the one who had been sitting in
25   the back seat. Both men were arrested because both had access to the weapon from where they
26   were sitting. After being transported to Ingleside station, officers found twelve small bags of
27   marijuana (weighing 4.3 grams) and fourteen rocks of cocaine base (weighing 1.92 grams)
28   during an inventory search of defendant Ragland (Exh. E; Opp. at 2; Goldborough Decl. ¶ 2–7).

**ANALYSIS**

Defendant Ragland is not entitled to suppression of the evidence obtained on November 17, 2003. The officers had reasonable suspicion that the occupants of the car had been involved in firing the shots in question. From the reported events that morning, the officers reasonably believed that the occupants of the car could be dangerous, thus justifying the car search for weapons.

Here, the officers were relying on two different reports that shots had been fired in the area. One report was from a qualified security guard — a party the responding officers had previously received credible information in other investigations (Goldborough Decl. ¶ 3). These two reports were sufficient for the officers to believe that shots had been fired even though no one actually saw the shots being fired. Additionally, both reports mentioned a white car. This investigatory stop took place at 6:20 a.m., a time when there was very little traffic in the area. The white vehicle the officers stopped drove down Sunnydale Avenue, from the very area that the unidentified caller had spotted the white car. This alone would be sufficient grounds for reasonable suspicion that the car had been involved in the shots-fired incident. In addition, the security guard told the officers that this was the same car whose occupants had gestured that the car was armed.

The stop to question one car occupant was reasonable and justified under the law. *Terry v. Ohio*, 392 U.S. 1, 25–26 (1968). With respect to the search of the car, the officers knew that the occupants posed a risk of being armed. Earlier that morning, the occupants had threatened the security guards. While the gesture at issue was not against the law, it was an affirmative signal by the occupants of the car that they were armed. As well, the gesture was made in a high-crime area. Extreme caution was in order because of the violent gang activity in the area. In light of these circumstances, with the recent reports of the shots fired, the affirmative gesture by the occupants of the car that they were armed, and the high likelihood that the car in question was the car before them, there was a high probability there was a gun in the car. That the officers had not seen any weapons dropped from the vehicle, and had not

3

found any weapons in the pat search raised the likelihood that a weapon would be found in the vehicle.

Protective searches are justified when police have a reasonable belief that the suspect poses a danger to an officer's safety. This is based on the fact that roadside stops can be extremely dangerous for police officers, and officers should be able to search for the possible presence of weapons. Officers can search the passenger compartment of an automobile so long as the police officer has a reasonable belief, based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officer's belief that the suspect is dangerous and may be able to gain immediate control of a weapon. Officers performing an area search during an investigative detention can only do so when they have reasonable suspicion, as required in a *Terry* search. *Michigan v. Long*, 463 U.S. 1032, 1049–50, n.14 (1983).

## CONCLUSION

For the reasons stated above, defendant Ragland's motion to suppress evidence derived from the November 2003 traffic stop and arrest is **DENIED**.

**IT IS SO ORDERED.**

Dated: October 18, 2006.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE