UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>EDGAR DIAZ, RICKEY ROLLINS,<br>DON JOHNSON, ROBERT CALLOWAY,<br>DORNELL ELLIS, EMILE FORT,<br>CHRISTOPHER BYES, PARIS<br>RAGLAND, RONNIE CALLOWAY,<br>ALLEN CALLOWAY, and REDACTED<br>DEFENDANTS NOS. ONE & TWO,<br><br>Defendants.<br>_____/ | No. CR 05-0167 WHA<br><br>**ORDER DENYING<br>DEFENDANT RAGLAND'S<br>MOTION TO<br>SUPPRESS EVIDENCE<br>(Doc. No. 613)** |

## INTRODUCTION

In this RICO gang prosecution, defendant Paris Ragland moves to suppress evidence obtained during a traffic stop and his subsequent arrest on March 8, 2005. An evidentiary hearing was held on October 17, 2006, during which defendant Ragland and one of the arresting officers, Officer John F. Burke, testified. For the reasons below, defendant Ragland's motion is **DENIED**.

## STATEMENT

The following are the Court's findings after an evidentiary hearing. On the evening of March 8, 2005, defendant Ragland was a passenger in Mr. Isoefa Pasene's 1996 Dodge Stratus. Officers John Burke and Kevin Knoble were working that night on a plain-clothes patrol in an

1 unmarked police car.  Officer Burke and his partner saw the Stratus traveling at a high rate of
2 speed northbound on Bayshore Boulevard while they were sitting at a traffic light intersecting
3 Bayshore Boulevard.  Officer Burke could immediately tell that the vehicle's speed was in
4 excess of the posted speed limit of thirty miles per hour; the vehicle was moving at a speed of
5 fifty to sixty miles per hour.  The Stratus drove through a yellow light, and when their light
6 immediately turned green, the unmarked police car sped up in order to pace the Stratus.
7 Pacing is when a car gets behind a vehicle at certain speed to test the first car's speed.
8 Officer Burke paced the vehicle at a speed of fifty miles per hour (Ragland Decl. ¶ 2;
9 Knoble Decl. ¶ 2).

10 Because the San Francisco Police Department has a policy against unmarked police cars
11 doing traffic stops, the officers radioed for a marked patrol car.  The unmarked police car
12 followed the Stratus onto Highway 101 northbound, and coordinated with a marked patrol car to
13 effect a traffic stop of the Stratus.  After the Stratus exited at Vermont Street, Officers Mike
14 Androvich and James Trail's marked police car stopped the Stratus at 120 17th Street.
15 Officers Burke and Knoble were also present when the marked police car pulled the vehicle
16 over (Ragland Decl. ¶ 2; Knoble Decl. ¶ 2).

17 Defendant Ragland initially gave the police officers a false name when asked by the
18 officers.  He claimed his name was Pierre Ragland (the name of his half-brother).  One of the
19 officers present knew defendant Ragland's name was not Pierre Ragland because the officer
20 knew Pierre.  When confronted, defendant Ragland confessed his name was Paris.  At the
21 hearing, defendant Ragland admitted that he had lied about his identity, and that he was aware
22 there were outstanding warrants for his arrest at the time.  The police officers then arrested
23 defendant Ragland and conducted a search incident to arrest.  They found crack cocaine from
24 his pants pocket (weighing 5.4 grams).  After he was arrested, defendant Ragland volunteered
25 that he knew where an "AK" was.  Before taking defendant Ragland to the booking station, the
26 officers followed up on defendant Ragland's information and found an AK-47 assault rifle as
27 a result of this information (Br. at 2, 3; Knoble Decl. ¶ 3, 4).

28

**ANALYSIS**

Both sides agree that the sole issue is whether the driver of the car in question exceeded the speed limit while driving on Bayshore Boulevard. After hearing evidence on this matter and reading the record, this Court finds Officer Burke's testimony reflects what happened on the night in question. Since the driver was exceeding the speed limit the officers had a legitimate reason to stop the vehicle and did not violate defendant's Fourth Amendment rights.

The police may effect an investigatory stop of a vehicle when the officer reasonably suspects that a traffic violation has occurred. *United States v. Willis*, 431 F.3d 709, 714 (9th Cir. 2005). The officer must have sufficient facts to reasonably believe that a traffic violation has occurred. *United States v. Miranda-Guerena*, 445 F.3d 1233, 1236 (9th Cir. 2006). In this case, it is a question of credibility. The testimony of defendant Ragland and Officer Burke is conflicting because defendant Ragland stated that Mr. Pasene, the driver, was not speeding while Officer Burke stated that he witnessed the defendant traveling at twenty to thirty miles per hour over the speed limit. For the following reasons, defendant Ragland's testimony is not credible.

Defendant Ragland contends that Mr. Pasene never exceeded the speed limit when they were driving on Bayshore Boulevard and testified that Officer Burke must either be lying or be mistaken. Defendant Ragland, however, has previously been untruthful in this very matter — he lied to the officers about his real identity that night in order to evade capture for pending arrest warrants. Defendant Ragland also testified that as of March 8, 2005, he had *never* before driven over the speed limit.[*]

In contrast, Officer Burke's testimony that he saw defendant Ragland speeding is credible. The officer had been trained at the police academy to identify when vehicles were speeding. There was no reason to believe the speedometer was broken. Even if his speedometer was inaccurate or broken, the officer had sufficient practical experience to be able

---

[*] Because of the government's failure to present the details regarding defendant's prior conviction for false imprisonment, the Court will not take defendant's prior felony conviction into consideration, being unable to tell whether it falls within the requirement of Rule 609.

3

to detect that defendant was traveling at a high rate of speed, substantially higher than the posted speed limit. While the CAD report does seem incomplete in comparison to the officer's more complete testimony, that does not mean the officer misrepresented what transpired on the night in question. Even an untrained person would be able to tell that the car was driving over the speed limit when it was traveling in excess of twenty miles per hour over the speed limit. There was no need for Office Burke to state anything more than a "high rate of speed" in his police report because the ultimate charge was not a speeding violation.

In sum, the officer's statement that he saw defendant Ragland and Mr. Pasene speeding that night is credible, and this order adopts the officer's testimony of what happened. This led to his reasonable belief that a traffic violation had occurred; the investigatory stop effected by Officers Trail and Androvich in their marked patrol unit, with Officers Burke and Knoble present, did not violate the Fourth Amendment.

## CONCLUSION

For the reasons stated above, defendant Ragland's motion to suppress evidence derived from the March 2005 traffic stop and arrest is **DENIED**.

**IT IS SO ORDERED.**

Dated: October 19, 2006.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

4